Loyd A. McMICHAEL and George McMichael, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 19743, 19744.

United States Court of Appeals Ninth Circuit.

Dec. 28, 1965.

A. Elwyn Larson, Nampa, Idaho, for appellants.

Sylvan A. Jeppesen, U. S. Atty., Robert E. Bakes, Asst. U. S. Atty., Boise, Idaho, for appellee.

Before BARNES, HAMLIN and MERRILL, Circuit Judges.

MERRILL, Circuit Judge:

On July 9, 1963, appellants drove their motorcycles over twenty miles of trails within the Idaho Primitive Area of the Boise National Forest. They admit see-

ing a sign at the entrance to the primitive area stating that motorized vehicles were prohibited. Appellants were convicted of a misdemeanor and fined $100 each under 16 U.S.C. § 551 [1] for violation of regulations prohibiting the operation of motorized vehicles within that portion of the national forests designated by the Secretary as "primitive areas." [2] Upon this appeal they challenge the validity of those regulations.

The Idaho primitive area was established in 1931 pursuant to regulation [3] in order:

"To conserve the primitive conditions of environment, habitation, subsistence and transportation for the enjoyment of those who cherish these early traditions and history of this country and desire to preserve in some degree the traits, qualities and characteristics upon which this Nation was founded.

To make it possible for people to detach themselves, at least temporarily, from the strain and turmoil of modern existence, and to revert to simple types of existence in conditions of relatively unmodified nature.

To afford unique opportunities for physical, mental and spiritual recreation and regeneration." (Idaho Primitive Area Report, March 17, 1931).

Appellants' position is that regulations establishing primitive, wilderness and wild areas and providing limitations upon the use to be made of such areas are not authorized by section 551 (see footnote 1).[4] That section, they point out, directs the Secretary of Agriculture to "make provisions for the protection against destruction by fire and depredations upon [established] public forests"; and authorizes the Secre-

1. 16 U.S.C. § 551:
"The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title, and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of sections 473–482 of this title or such rules and regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both."

2. Reg. U–1 (36 C.F.R. 251.20(b)), promulgated in 1939, prohibits the use of motor vehicles in areas of the national forests designated as "wilderness areas." This regulation (and its companion Reg. U–2) accomplished a change in terminology. Reg. L–20, promulgated in 1930 (see footnote 3, infra), had provided for the establishment of "primitive areas." By the new regulations this classification as to new areas was terminated. Areas thereafter were to be designated as either "wilderness" areas or "wild" areas, depending upon the particular condition.

By Reg. U–2(a) (36 C.F.R. 251.21(a)), promulgated June 7, 1963, the prohibition of Reg. U–1 against use of motorized vehicles in wilderness areas was extended to areas which, prior to 1939, had been designated as primitive areas.

3. Reg. L–20 provided in part:
"The Chief of the Forest Service shall determine, define and permanently record * * * a series of areas to be known as primitive areas, and within which will be maintained primitive conditions of environment, transportation, habitation, and subsistence, with a view to conserving the value of such areas for purposes of public education and recreation. Within any area so designated * * * no occupancy under special-use permit shall be allowed, or the construction of permanent improvements by any public agency be permitted, except as authorized by the Chief of the Forest Service or the Secretary."

4. Appellants also claim that the regulations on their face and as applied are unconstitutional; however, appellants do not support these contentions with any argument. This type of Congressional delegation of authority to enact regulations is well within the Constitutional limits. It appears that these regulations were fairly applied to the appellants. Therefore, we see no merit in these contentions of the appellants.

tary to "make such rules and regulations and establish such service as will insure the objects of such reservations." They contend that while such regulations may relate to "occupancy and use," still, their purpose must be to "preserve the forests thereon from destruction." In support of their reading of section 551, appellants point to 16 U.S.C. § 475, enacted June 4, 1897, which provides in part:

"* * * No national forest shall be established, except to improve and protect the forest within the boundaries, or for the purpose of securing favorable conditions of water flows, and to furnish a continuous supply of timber for the use and necessities of citizens of the United States: * * * *"

■ The consistent administrative interpretation of section 551, however, has been that while recreational considerations alone will not support the establishment of a national forest, they are appropriate subjects for regulation. Congress has tacitly shown its approval of this interpretation by appropriating the sums required for its effectuation. Further Congress has expressly manifested its approval by actually adopting and furthering administrative policy in two enactments.

1. The Multiple-Use Sustained-Yield Act of June 12, 1960 (74 Stat. 215; 16 U.S.C. § 528) states in part:

"It is the policy of the Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed and wildlife and fish purposes. The purposes of this Act are declared to be supplemental to, but not in derogation of, the purposes for which the national forests were established as set forth in the Act of June 4, 1897 (16 U.S.C. 475)."

Section 2 of the same Act provides:

"The Secretary of Agriculture is authorized and directed to develop and administer the renewable surface resources of the national forests for multiple use and sustained yield of the several products and services obtained therefrom. In the administration of the national forests due consideration shall be given to the relative values of the various resources in particular areas. The establishment and maintenance of areas of wilderness are consistent with the purposes and provisions of this Act."

That this Act constitutes a recognition of past administrative construction appears from S.Rept.No. 1407 and H.Rept. No. 1551, 86th Cong., 2d Sess., where (in the Senate Report at page 7) it is stated:

"The authority to administer recreation and wildlife habitat resources of the national forest has been recognized in numerous appropriation acts and comes from the authority contained in the *Act of June 4, 1897*, to regulate the 'occupancy and use' of the national forest."

2. The Wilderness Act of September 3, 1964 (16 U.S.C. §§ 1131–1136) is further indication that the Congressional policy supports the regulations in question.[5] The first section of that Act (16 U.S.C. § 1131(a)) states in part:

"In order to assure that an increasing population, accompanied by expanding settlement and growing mechanization, does not occupy and modify all areas within the United States and its possessions, leaving no lands designated for preservation and protection in their natural condition, it is hereby declared to be the policy of the Congress to secure for

5. 16 U.S.C., § 1133(a) provides in part:
"The purposes of this chapter are hereby declared to be within and supplemental to the purposes for which national forests and units of the national park and national wildlife refuge systems are established and administered * * *."

the American people of present and future generations the benefits of an enduring resource of wilderness."

The statute's definition of wilderness [6] and prohibition of use of motorized vehicles [7] lend further explicit support.

■ We conclude that the regulations in question are valid.

Appellants contend that the fixing of the boundaries of the Idaho primitive area was arbitrary and capricious since the area geographically, topographically and otherwise is no different from surrounding area of the national forests and is entitled to no greater protection.

■ But this argument loses its force once we have determined that recreational needs are valid considerations. The area is preserved not because it is, due to its peculiar character, in need of special protection; it is preserved in order to provide the public with an area of wilderness. Wilderness does not exist because Nature created it as such; it exists solely because man has not yet intruded upon it. The choice of what shall be preserved is an administrative choice in which geographical and topographical considerations are certainly germane but hardly are subject to judicial review.

Affirmed.

6. 16 U.S.C. § 1131(c) provides:
"A wilderness, in contrast with those areas where man and his own works dominate the landscape, is hereby recognized as an area where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain. An area of wilderness is further defined to mean in this chapter an area of undeveloped Federal land retaining its primeval character and influence, without permanent improvements or human habitation, which is protected and managed so as to preserve its natural conditions and which (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unconfined type of recreation; (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation

and use in an unimpaired condition; and (4) may also contain ecological, geological, or other features of scientific, educational, scenic, or historical value."

7. 16 U.S.C. § 1133(c) provides:
"Except as specifically provided for in this chapter, and subject to existing private rights, there shall be no commercial enterprise and no permanent road within any wilderness area designated by this chapter and, except as necessary to meet minimum requirements for the administration of the area for the purpose of this chapter (including measures required in emergencies involving the health and safety of persons within the area), there shall be no temporary road, no use of motor vehicles, motorized equipment or motorboats, no landing of aircraft, no other form of mechanical transport, and no structure or installation within any such area."