UNITED STATES of America,
Plaintiff-Appellee,

v.

Stewart HYMANS and Mark Paynter,
Defendants-Appellants.

Nos. 71–1407, 71–1441.

United States Court of Appeals,
Tenth Circuit.

July 7, 1972.

**616**

Paul D. Cooper, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for plaintiff-appellee.

Thomas T. Crumpacker, Denver, Colo. (Wood, Ris & Hames, Denver, Colo., on the brief), for defendants-appellants.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Perhaps the primary issue here to be resolved is whether nudity under the circumstances of this case constitutes "indecent conduct." We conclude that it does. A bit of background information will place the controversy in focus.

As concerns National Forests, 16 U.S. C. § 551 provides, inter alia, that the Secretary of Agriculture "may make such rules and regulations * * * as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction * * *."

Acting in a manner he deemed to be in accord with the foregoing statute, the Secretary promulgated the following regulation (36 C.F.R. 251.93):

"The following acts are prohibited at developed recreation sites and post-ed areas of concentrated public recreation use.

"(a) Inciting or participating in riots, or indulging in boisterous, abusive, threatening, or indecent conduct."

Pursuant to this regulation, the geographical area with which we are here concerned was posted as an area of Concentrated Recreation Use, with the legend on the notice containing the following:

"PLEASE

NO CAMPING—FIRES
OR PUBLIC NUDITY"

It was in this general setting that the two appellants, Stewart Hymans and Mark Paynter, along with David Wright, Karen Whiteside and Dennis Holt were apprehended by forest rangers while skinnydipping in the Roaring Fork River within a posted area in the White River National Forest. Specifically, the five had been swimming in the nude and at the moment of their arrest were on the bank, sunning themselves, and eating watermelon.

Based on these events, Hymans and Paynter, and the others, were charged with a violation of 16 U.S.C. § 551 and 36 C.F.R. 251.93, i. e., indecent conduct in a developed recreation site and a post-ed area of concentrated public recreation use. Pursuant to 18 U.S.C. § 3401, each waived his or her right to a trial by jury before a judge of a district court and consented to a trial before the Commissioner. Upon trial, all were convicted and each was fined $50. Appeal was then taken to the United States District Court which, upon review of the record as made before the Commissioner, affirmed.

Hymans and Paynter now appeal to this court and their counsel frames the issues as follows: (1) Whether skinny-dipping is indecent conduct within the meaning of 36 C.F.R. 251.93(a); (2) whether the indecent conduct regulation is void for vagueness; and (3) whether

the indecent conduct regulation is outside the scope of the power to regulate given by Congress to the Secretary of Agriculture. We shall now consider each of these grounds, but in reverse order.

## I.

The Secretary of Agriculture is empowered by 16 U.S.C. § 551 to make and promulgate rules and regulations concerning the "occupancy and use" of National Forests. It would certainly appear that a rule by the Secretary forbidding indecent conduct in posted areas of concentrated public *use* would be well within the power to regulate the occupancy and *use* of National Forests delegated to him by Congress.

In McMichael v. United States, 355 F.2d 283 (9th Cir. 1965), the argument was advanced, as it is here, that though the Secretary of Agriculture may make rules and regulations which relate to "occupancy and use" of National Forests, the underlying purpose of all such rules and regulations must still be to "preserve the forests from destruction," and that if such not be the underlying purpose of a particular regulation, then the regulation in question is beyond the power delegated by Congress. This argument was rejected with the observation that such was at odds with the "consistent administrative interpretation" of 16 U.S.C. § 551. We agree. In *McMichael,* a regulation prohibiting the operation of a motorized vehicle within a posted portion of the Boise National Forest was held valid.

In support of our conclusion that Congress did empower the Secretary to make a rule and regulation of the type here under consideration, *see also* United States v. Cassiagnol, 420 F.2d 868 (4th Cir. 1970), cert. denied, 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970), and United States v. Reeves, 39 F.Supp. 580 (W.D.Ark.1941). In *Cassiagnol,* where the court was concerned with a delegation by Congress to the General Services Administration of the power to make rules and regulations relating to Government property, reference was made, by way of dictum, to the fact that "similar grants of general regulatory and administrative authority are common, e. g., national parks, national military parks and battlefields, national forests, watersheds, etc." *Cassiagnol,* incidentally, involved a regulation prohibiting unwarranted loitering or assembly and unseemly or disorderly conduct while on Government property.

In *Reeves,* a regulation by the Secretary that dogs be not allowed to run at large in the Ozark National Forest was upheld with the following pertinent comment:

"The statute authorizes the Secretary of Agriculture in the management of the forests to issue rules 'to regulate their occupancy and use.' As long as such rules and regulations tend to protect the lands and faithfully preserve the interest of the people of the whole country in the lands, the courts should enforce such rules and regulations. A private owner is entitled to protection against willful trespasses and I see no reason why the government is not entitled to the same protection. The mere fact that any one could heretofore go upon the land or could permit his dog to enter the land is not any reason for holding the rule invalid. The government has the right to withdraw such custom-established license at any time.

"The grant of power to issue rules and regulations pertaining to the use and occupancy of the lands is not dependent upon the power to preserve the forests from destruction. The grant of the power to regulate the use and occupancy is in addition and independent of the power to issue rules and regulations to preserve the forests from destruction. One of the attributes of ownership is the right to prevent trespasses by persons or animals.

"National Forests are established for the benefit of the public and if the best interests of the public require that unconfined dogs or dogs not in leash shall not be permitted thereon, as the Secretary of Agriculture found when he issued the regulation now under consideration, the same is valid.
* * * "

## II.

■ It is next urged that the regulation of the Secretary prohibiting indecent conduct in certain designated areas in a National Forest is unconstitutionally vague, with emphasis being made on the alleged vagueness of the two words "indecent conduct," and more particularly the one word "indecent." We are of the view that though indecent conduct may be manifested in a variety of ways, the phrase itself has a well defined meaning and is not subject to the charge of vagueness. In Manuel Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962), the words "obscene, lewd, lascivious, indecent, filthy or vile" were held to connote something that is portrayed in a manner so offensive as to make it unacceptable under current community mores and, as concerns the one word "indecent," the court, resorting to Webster's New International Dictionary, defined it as:

"Not decent; specif.: Unbecoming or unseemingly; indecorous . . . .

"Syn.—Immodest, impure; gross, obscene."

In this general regard it was stated in United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), as follows:

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

"On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise. * * * "

Application of the teaching of *Manuel Enterprises* and *Harriss* leads us to conclude that the phrase "indecent conduct" does give "fair notice" of the type of conduct forbidden by the rule and regulation of the Secretary and accordingly is not constitutionally vague. The cases cited by counsel, namely, Palmer v. City of Euclid, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971), involving a "suspicious person ordinance"; Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), which concerns an ordinance making it a criminal offense for two or more persons to assemble on a sidewalk and annoy passersby; and Rabeck v. New York, 391 U.S. 462, 88 S.Ct. 1716, 20 L.Ed.2d 741 (1968), relating to a statute prohibiting the sale of magazines which would appeal to the lust of persons under eighteen or to their curiosity as to sex or to the anatomical differences between the sexes, are inapposite.

## III.

■ As indicated, the primary contention of the appellants is that skinnydipping is not "indecent conduct" within the meaning of 36 C.F.R. 251.93(a). Without being supertechnical, it should be pointed out that at the time of their arrest the appellants were actually sunbathing in the nude on the bank of the river in which moments before they had been skinnydipping. Be that as it may, we believe that disposition of this particular contention can be made on the basis of the charge and the evidence in support thereof as adduced before the Commissioner, without reference to the myriad of conflicting cases concerning indecent exposure, obscenity, topless dancers, and the like.

The rule and regulation giving rise to the present prosecution prohibits indecent conduct at "developed recreation sites and posted areas of concentrated public recreation areas." Accordingly, this is not an effort by the Secretary to outlaw indecent conduct, or nude sunbathing, at all times and in all places. Rather, the gist of the charge is, in essence, that the appellants were guilty of indecent conduct, i. e., nude sunbathing, in a part of the National Forest where the general public is or is likely to be and which because of this fact had been previously designated and posted as a developed recreation site or a posted area of concentrated public use.

Reference at this time to the evidence adduced before the Commissioner is deemed appropriate, although we recognize that in this connection our only task, as was the task of the district court, is to ascertain if the record discloses evidence which will support the Commissioner's judgment of conviction. United States v. Williams, 220 F.Supp. 556 (N.D.Cal.1963). The Government's evidence is summarized as follows:

"On 8/25/70 at 3:30 P.M. he [the Forest Ranger] went to the Grottos Area while on duty at White River Nat'l Forest near Lincoln Gulch Campground with Forest Rangers Finley and Lynch. Observed 5 defts. there nude sunbathing on rocks by stream. Other people present in the immediate vicinity. This was an area of concentrated recreation use with posted signs prohibiting public nudity."

When viewed in the light of the charge, i. e., indecent conduct in a public place in a National Forest, and as viewed in the further light afforded by the evidence, i. e., nude sunbathing near a public campground with other people in the immediate vicinity, it becomes abundantly clear to us that the type of public nudity with which we are here concerned is indeed a form of indecent conduct and comes well within the definition of such.

In support of our conclusion, *see,* for example, State v. Rocker, 475 P.2d 684 (Hawaii 1970), where it was held that though sunbathing in the nude is not per se illegal as being a common nuisance, nevertheless, when the nude sunbathing occurred at a beach which, though somewhat hidden from public view, was nonetheless popular for fishermen and was accessible to the general public by a well worn path, such would permit the inference that the nude sunbathing was intended to be seen by others and warranted a conviction for indecent exposure.

In State v. Nelson, 178 N.W.2d 434 (Iowa 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 864, 27 L.Ed.2d 826 it was held that mere public nudity does not in itself constitute the crime of indecent exposure and to constitute that crime there must be an intentional exposure of the body or the private parts thereof with an intent to breach public rules of behavior. *See also* the annotation appearing in 94 A.L.R.2d 1353.

Finally, we do not deem the so-called "equities" of the case to work in favor of the appellants. In his argument to the district court, Hymans volunteered that they knew the area in question had been posted and despite that knowledge they apparently determined to challenge the validity of the regulation. Nor are we persuaded by such nostalgic authorities as James Whitcomb Riley's "The Old Swimming Hole," or Mark Twain's "Adventures of Huckleberry Finn." The instant case is one of public nudity.

Judgments affirmed.