528 F.2d 321
 11 Fair Empl.Prac.Cas. 824,
10 Empl. Prac. Dec. P 10,452
Jo Ann WOOD and Ardella Fitzpatrick, Appellants,
v.
Okey A. MILLS, Sheriff of Raleigh County, West Virginia, Appellee.
Jo Ann WOOD and Ardella Fitzpatrick, Appellees,
v.
Okey A. MILLS, Sheriff of Raleigh County, West Virginia, Appellant.
 Nos. 74--1240 and 74--1241.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 7, 1974.
Decided Oct. 22, 1975.
 
 1
 Franklin D. Cleckley, Morgantown, W. Va. (Donald L. Pitts, Beckley, W. Va., on brief), for Jo Ann Wood and Ardella Fitzpatrick.
 
 
 2
 William R. Wooton, Asst. Pros. Atty., Beckley, W. Va. (Thomas Canterbury, Pros. Atty., Beckley, W. Va., on brief), for Okey A. Mills, Sheriff.
 
 
 3
 Before BOREMAN, Senior Circuit Judge, BUTZNER, Circuit Judge, and MERHIGE, District Judge.
 
 
 4
 MERHIGE, District Judge.
 
 
 5
 Jo Ann Wood and Ardella Fitzpatrick filed this Section 1983 action in October 1972 against Zina French, then the Sheriff of Raleigh County, West Virginia, the Raleigh County Court, and the Commissioners of the County Court attacking alleged discriminatory salary differentials based entirely upon sex, between male and female employees of the County Jail. On October 29, 1973, the District Court dismissed Zina French as a party defendant and substituted appellee Okey A. Mills, who replaced French as Sheriff in January 1973, in his place. The case was tried on November 8, 1973, and at the conclusion of the evidence the District Court dismissed all defendants except Sheriff Mills. The trial court found that Sheriff Mills had engaged in unconstitutional sex discrimination by paying jail 'matrons' (females) lower wages than jailers (males) when matrons performed essentially the same tasks as jailers, and entered a pay equalization order. Wood and Fitzpatrick appeal only from the District Court's denial of back pay and attorney's fees. Sheriff Mills cross appeals from the District Court's finding of unconstitutional discrimination and consequent pay equalization order. Concluding that the District Court's finding of unconstitutional sex discrimination was not clearly erroneous, we affirm.I.
 
 
 6
 The Raleigh County Jail employs seven jailers (male) and four matrons (female) whose salaries are paid by the Raleigh County Court. At the commencement of this litigation there existed approximately a $75--100 differential between the salaries of matrons and jailers. Sheriff Mills is the chief administrator of the County Jail and sets the respective salaries of matrons and jailers. Both jailers and matrons are required to take the same civil service exams and continuing education law enforcement courses.
 
 
 7
 Both matrons and jailers are supervised by a head jailer. The jailers assist the head jailer in the processing of male prisoners. The matrons likewise assist the head jailer with the processing of female prisoners. A matron is required to be present when a female prisoner is being arrested, searched, or transported. Matrons have participated in the arrest of female suspects, and, in so doing, perform the same job that male jailers perform when arresting male suspects. Matrons occasionally serve papers and, additionally, answer phones and keep jail records. When matrons go out into the field to make arrests or serve papers, however, a male jailer takes over their secretarial duties. Both matrons and jailers are responsible for the overall security of the jail and when the head jailer is absent from the jail, a matron will take charge of security. The head jailer, Roger Gill, testified that matrons performed essentially the same duties with females that jailers performed with males, and that jailers worked no harder or longer than matrons.
 
 II.
 
 8
 The Equal Protection Clause of the Fourteenth Amendment prohibits a state, its officers, its governmental subdivisions and their officers from 'deny(ing) to any person within its jurisdiction the equal protection of the laws.' Since Wood and Fitzpatrick argue that the Equal Protection Clause invalidates Sheriff Mill's practice of basing wage differentials on the gender of his employees, we deem it appropriate to discuss, briefly, the appropriate level of review in a sex discrimination case.
 
 
 9
 The Equal Protection Clause requires the state to treat alike those who are similarly situated. Legislation and state administrative action, of necessity, involves drawing lines and making distinctions between different categories of persons. The Court has generally permitted the states wide latitude when classifying persons for the purpose of governmental action except when the classification itself was based upon certain 'suspect criteria--race[1] and alienage[2] being the most prominent--or infringed certain rights--the right to vote,[3] the right to procreate,[4] the right of access to the criminal process,[5] and the right to travel[6]--which the Court deemed 'fundamental.' Whenever legislatures or other governmental defendants draw lines with respect to these 'suspect' criteria and 'fundamental' rights, their action will be strictly scrutinized by reviewing courts. E.g., Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1969); Harper v. Virginia Board of Elections, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). When challenged the governmental defendant involved must demonstrate a compelling state interest in maintaining such a classification. Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).
 
 
 10
 We deal today with a wage classification predicated upon a person's sex. Although classification by sex has not yet been deemed 'suspect',[7] the Court has nonetheless required strong justification for sex based classifications. See, e.g., Weinberger v. Weisenfeld, 420 U.S. 636, 642--645, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). Even though the governmental defendant need not be put to the heavy burden of proving a compelling state interest in order to save a gender based distinction, it must nevertheless prove a great deal more than was once acceptable under the mere minimal rationality[8] test. Eslinger v. Thomas, 476 F.2d 225, 230--31 (4th Cir. 1973). The governmental defendant confronts an emergent sex discrimination standard of equal protection review which falls approximately midway on the continuum between strict scrutiny and minimum rationality, id. at 231. It must show that the gender based distinction bears a 'fair and substantial' relationship to the furtherance of a governmental objective which is, in itself, a constitutionally permissible objective. Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
 
 
 11
 When we apply the test formulated in Reed v. Reed and applied by Eslinger v. Thomas, supra, to the factual findings made by the District Court, we have no difficulty affirming the District Court's conclusion that the gender based wage differentials denied Wood and Fitzgerald the equal protection of the law.
 
 III.
 
 12
 The question is whether this gender based wage differential bears a 'fair and substantial' relationship to a permissible governmental objective which the Sheriff of Raleigh County seeks to promote through the instrument of the wage differential. Reed v. Reed, 404 U.S. 71, 75--76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The apparent governmental objective which the Sheriff assertedly seeks to promote is different pay for qualitatively and quantitatively different levels of work. That, of course, is a permissible governmental objective.
 
 
 13
 The District Court found that jailers and matrons performed essentially the same work. Its finding was based on its evaluation of the facts and its opportunity to gauge the credibility of the witnesses. We may not disturb this finding unless our review of the record reveals it to be clearly erroneous. Rule 52(a), F.R.Civ.P. Our review of the record and briefs reveals ample support for the trial court's finding and does not leave us 'with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 
 14
 At trial Sheriff Mills cited three justifications for the gender based wage differentials. First, he indicated that the wage discrimination had always been practiced in the Raleigh County jail: 'For one thing it is the way it has always existed since we have had a matron in Raleigh County . . .' Tr. 32. That discrimination has been practiced in the past, however, is no bar to its eradication by legal action when found in the present and that rationale, therefore, provides the Sheriff with no defense to an equal protection claim. Brown v. Board of Education, 347 U.S. 483, 492, 74 S.Ct. 686, 98 L.Ed. 873 (1954).
 
 
 15
 Second, the Sheriff asserted that the matrons were paid less because they had an easier job to perform than the jailers. His testimony as rebutted by that of the head jailer, Roger Gill, who testified that the jail matrons worked just as hard as the jailers. It was within the province of the District Court to give more weight to the testimony of Gill than to Sheriff Mills, particularly when it appears from the record that Gill was more familiar with the duties and work performance of the matrons than Mills. See Tr. 27. We cannot therefore say that the trial court's evaluation of the competing testimony was clearly erroneous. Rule 52(a), F.R.Civ.P.
 
 
 16
 The third argument urged by the Sheriff, and that which is principally advanced on appeal, seeks justification of the wage differential on the ground that the jailers by virtue of their size and strength are ultimately responsible for the security of the jail. First, we think that there is inadequate support for this defense in this record. There was ample evidence that matrons worked just as hard as jailers and performed the same duties with respect to female prisoners as jailers performed with respect to male prisoners. At trial, Sheriff Mills voiced the concern that the matrons would not, because of their lack of size and strength, be able to cope with an uprising or rebellion in the jail. Fortunately, uprisings and rebellions have not occurred in the Raleigh County jail, hence we conclude that such a hypothetical situation provides very weak support for a $75--100 per month pay differential. Moreover, Sheriff Mills testified that matrons would be utilized in the case of uprising or rebellion--pushing buttons or answering phones--even though they would not be exposed to danger. Furthermore, there is ample evidence in the record which supports the District Court's conclusion that the wage differential was predicated upon sex bias and not security consciousness. The Sheriff testified that there were male employees whom he could not assign to particular jobs, presumably security related jobs, because they lacked the requisite size and strength. Tr. 36. These men, however, were not subjected, as were plaintiffs, to the jail wage differential which was allegedly predicated upon size and strength. Consequently, we hold that the District Court was not clearly erroneous in its conclusion that the wage differential between matrons and jailers was based upon gender and was not security related.
 
 
 17
 Given the finding that matrons and jailers performed essentially the same tasks, there exists no 'fair and substantial' basis for this gender based wage differential. The gender based wage discrimination practiced by the Sheriff, therefore, denied the plaintiffs the equal protection of the laws in violation of the Fourteenth Amendment and we accordingly affirm the District Court's pay equalization order.
 
 IV.
 
 18
 Although the District Court found the wage differentials between jailers and matrons violative of the Constitution, it nonetheless refused to award back pay and attorney's fees on the ground that the Sheriff in practicing gender based wage discrimination had only followed a pattern established by his predecessors and had not acted with discriminatory intent or with malice in hewing to this pattern.
 
 
 19
 A. From our review of the facts of this case, we conclude that the District Court did not abuse its discretion in denying plaintiffs an award of back pay and, accordingly, affirm the order of the District Court.
 
 
 20
 B. The District Court's denial of attorney's fees was appropriate. Aleyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Hallmark Clinic, Harold R. Hoke, M.D., 519 F.2d 1315 at 1317 (4th Cir. 1975); Wright v. Jackson, 522 F.2d 955 at 957 (4th Cir. 1975); see Burt v. Abel, slip op. at 13 (4th Cir. Aug. 14, 1975).
 
 
 21
 The judgment of the District Court is in all respects affirmed.
 
 
 
 [1]
 Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944)
 
 
 [2]
 Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948)
 
 
 [3]
 Harper v. Virginia Board of Elections, 383 U.S. 663, 667, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)
 
 
 [4]
 Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)
 
 
 [5]
 Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)
 
 
 [6]
 Shapiro v. Thompson, 394 U.S. 618, 629--31, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)
 
 
 [7]
 See Stanton v. Stanton, 421 U.S. 7, 13, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); Eslinger v. Thomas, 476 F.2d 225, 231 (4th Cir. 1973)
 
 
 [8]
 See Railway Express Agency, Inc. v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949)