Michael PEED, Plaintiff,

v.

Max CLELAND, etc., Defendant.

Civ. A. No. M–80–2551.

United States District Court,
D. Maryland.

June 3, 1981.

Dennis W. Carroll and Stephanie Klein, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Paul R. Kramer, Deputy U. S. Atty., Baltimore, Md., Sandra M. Schraibman and Richard E. Greenberg, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

In this action the plaintiff Michael Peed seeks to challenge the manner in which the Veterans' Administration (VA) calculates monthly VA pensions. Presently pending before the court is a motion to dismiss filed on behalf of the defendant, along with a cross-motion for summary judgment filed by the plaintiff.

### I. Factual Background

The plaintiff Michael Peed served on active duty in the United States Marine Corps from November, 1945 to November, 1948, and from February, 1949 to August, 1954. While in the Marines, Mr. Peed received an accidental gunshot wound in his left hand, which resulted in his being placed on the temporarily disabled/retired list on September 1, 1954. On August 1, 1958, Mr. Peed was permanently retired due to disability. When he was discharged from active duty in August, 1954, he was determined to be suffering from a 30% service-connected disability. As a result, Mr. Peed was entitled to receive retirement pay from the Marines pursuant to 10 U.S.C. §§ 1201 and 1401.

On June 2, 1957, Mr. Peed suffered a diving accident which resulted in nearly total paralysis. From the time of the accident until the present, Mr. Peed has been confined to a wheelchair and is permanently housebound. After the accident, the VA determined that Mr. Peed was totally and permanently disabled. Consequently, Mr. Peed was eligible pursuant to 38 U.S.C. § 521, for a disability pension, including an allowance for "aid and attendance" since he was housebound.

In order for Mr. Peed to receive a VA pension, he was required, pursuant to 38 U.S.C. § 3104, to waive the military retirement pay to which he was otherwise enti-tled. On March 1, 1958, Mr. Peed executed a waiver of his military retirement pay and began receiving pension benefits in an amount calculated without consideration of the amount of the retirement benefits which he had waived.

On June 13, 1973, Mr. Peed was advised by the VA that his pension benefits were to be reduced, effective September 1, 1973, due to recent amendments to VA regulations codified at 38 CFR §§ 3.261 and 3.262. Under these amended regulations, the amount of Mr. Peed's military retirement pay was to be considered as income in computing the amount of his pension, even though Mr. Peed had waived his retirement pay in order to be eligible to receive his pension. Mr. Peed protested this reduction in benefits and eventually appealed to the Board of Veterans' Appeals. On December 14, 1973, the Board of Veterans' Appeals held that the reduction in Mr. Peed's pension was legally justified. Since that time Mr. Peed has tried in various ways to obtain assistance in appealing the VA policy. On September 19, 1980, he filed the present action.

### II. Analysis of Current Statutory Provisions

The VA pension program was designed to provide income to eligible veterans in an amount determined according to financial need. As a part of this scheme of benefits, 38 U.S.C. § 521 provides pension benefits to income eligible veterans who served in the military service for 90 days or more during a period of war, who were discharged under honorable conditions, and who are disabled due to non-service connected injuries. Since the amount of pension is based upon need, any other source of income to the veteran will reduce the amount of his or her monthly pension benefits.

In determining the amount of pension benefits to be received by a veteran, the VA first computes the individual's annual income in order to determine financial need. In computing annual income, Congress has provided, subject to certain enumerated exceptions which are inapplicable in the present case, that:

"[A]ll payments of any kind or from any source (including salary, retirement or annuity payments, or similar income, which has been waived, irrespective of whether the waiver was made pursuant to statute, contract, or otherwise) shall be included . . ."

38 U.S.C. § 503. The current regulations which implement this section specify that retirement pay received from the armed forces is to be included in calculating gross income, 38 CFR § 3.261(15). This is true even if those benefits have been waived. 38 CFR § 3.262(h).

Eligibility for military retirement pay is determined in two manners. Veterans who served for a period of twenty years or more are entitled to retirement pay based solely on their length of service. See 10 U.S.C. § 3911 et seq. (Army); 10 U.S.C. § 6321 et seq. (Navy and Marine Corps); 10 U.S.C. § 8911 et seq. In addition, veterans who were discharged from the armed services due to a service connected disability are entitled to retirement pay. In the latter case, the amount is determined either by multiplying the percentage of disability by the veteran's basic military pay or by multiplying the veteran's total years of service by his basic military pay. See 10 U.S.C. §§ 1201 and 1401.

Until recently, Congress specifically precluded the simultaneous receipt of both retirement pay and pension benefits from the VA. 38 U.S.C. § 3104[1]. If a veteran were eligible for both types of benefits, then that individual would have to choose between the two. Thus, if the amount of a veteran's pension would exceed his retirement pay, then in order to receive pension benefits the veteran would have to waive his right to retirement pay.

In 1978, Congress enacted the Veterans' and Survivors' Pension Improvement Act ("the Improvement Act"), Pub.L.No. 95–588, 92 Stat. 2500 (1978). Prior to the Improvement Act, pension benefits were computed under a system with an annual income limitation and a sliding scale of benefits dependent upon a veteran's total annual income. Pensions received under the Improvement Act, or so-called "improved pensions" are computed by establishing a basic level of income support and providing a pension in an amount equal to the difference between the veteran's income and the income level of support established by Congress. The Improvement Act contains a grandfather clause which allows veterans who were receiving benefits prior to the Act to elect to receive either the pension as previously computed, the so-called "section 306 pension," or the improved pension. The grandfather clause further provides that "Any person eligible to make an election . . . . who does not make such an election shall continue to receive pension at the monthly rate being paid to such person on December 31, 1978 . . ." 38 U.S.C. § 521 note. Thus, any pensioner receiving benefits prior to the 1978 amendment can continue to receive pension benefits under the terms and conditions of the prior program so long as he or she remains eligible.[2] See H.Rep.No.95–1768, 95th Cong., 2d Sess. 30–31 (1978), reprinted in [1978] U.S.Code Cong. & Ad.News 5583, 5702, 5716. Therefore, any veteran receiving a Section 306 pension is still required to waive any eligibility for retirement pay in order to receive pension benefits. In any such case, the amount of retirement pay waived is, under the applicable regulations, still considered as annual income to the veteran in computing the amount of pension benefits to be awarded.

On October 7, 1980, Congress amended 38 U.S.C. § 3104 to allow a veteran to receive both pension and retirement pay so long as the amount of retirement pay received is included as annual income in computing the amount of pension benefits to be awarded. Pub.L.No. 96–385, § 503(a), 94 Stat. 1534 (1980). Thus veterans now receiving improved pensions may additionally receive retirement pay, as long as the amount is considered as annual income in computing

---

1. This was true until the statute was amended on October 7, 1980, as discussed infra.

2. Plaintiff Peed still continues to receive a Section 306 pension.

the proper amount of pension benefits available.

### III. Analysis of the Parties' Claims

The plaintiff's cause of action in this case is based, in essence, on two alternative legal theories. Initially, the plaintiff contends that the regulations implemented by the VA in 1972, as set forth in 38 CFR §§ 3.261 and 3.262, effective September 1, 1973, were contrary to the statutory intent of Congress in enacting 38 CFR § 503. Specifically, the plaintiff argues that Congress did not intend that military retirement pay, which a veteran, by statute, must waive in order to be eligible to receive a pension, be considered as income to the veteran and therefore reduce his pension. Alternatively, the plaintiff argues that if the court finds that the regulations comport with the statutory intent, then 38 U.S.C. § 503 is unconstitutional in that it violates the plaintiff's Fifth Amendment rights to equal protection and due process.

### A. Are the Regulations, as set forth in 38 CFR §§ 3.261 and 3.262, Contrary to the Statutory Mandate of 38 U.S.C. § 503?

In reviewing the administrative regulations in the present case, the court is guided by the principle that "courts should defer to an agency's construction of its statutory mandate, particularly when that construction accords with well-established congressional goals." *Board of Governors v. First Lincolnwood Corp.*, 439 U.S. 234, 251, 99 S.Ct. 505, 515, 58 L.Ed.2d 484 (1978) (*citing Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *Commissioner v. Sternberger's Estate*, 348 U.S. 187, 199, 75 S.Ct. 229, 235, 99 L.Ed. 246 (1955). In determining whether an administrative regulation is consistent with the statutory mandate, the reviewing court must sustain the regulation "so long as it is reasonably related to the purposes of the enabling legislation."[3] *Mourning v. Family Publications Service, Inc.*, 411 U.S.

356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973) (*citing Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280–281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969)).

The defendant contends that the regulations in question are in accord with the explicit language of 38 U.S.C. § 503(a) which provides that annual income shall include "all payments of any kind or from any source including ... retirement ... payments ... which ha[ve] been waived, irrespective of whether the waiver was made pursuant to statute..." As stated by the defendant, the underlying regulations give effect to the literal meaning of the statute. The plaintiff, however, contends that the court cannot look at 38 U.S.C. § 503 in isolation, but must consider it within the overall statutory framework. In this context, the plaintiff contends that it is apparent that Congress never intended that military retirement pay, which a veteran must waive in order to receive his pension, be considered as income to that veteran.

In order to determine the applicable legislative intent, it is necessary briefly to review certain aspects of the legislative history of the structure of veterans' pension benefits. Prior to 1959, VA pension benefits were awarded on an all or nothing basis, with eligibility determined according to income. Under the system, one could waive a portion of independent income to fall within the eligibility range and then receive full pension benefits. § 503 was initially enacted in 1958 to prevent these egregious abuses of the system.

In 1959, the pension system was revised in order "to provide a liberalized and new pension law, based on the general principle of need and giving the greatest amount of pension to those in the greatest need." Sen.Rep.No.86–666, 86th Cong., 1st Sess. (1959), *reprinted in* [1959] U.S.Code Cong. & Ad.News 2190. Accordingly, the 1959 Act

---

**3.** This standard is applicable where the empowering section of the statute simply states that the agency may "make ... such rules and regulations as may be necessary to carry out the provision of this Act," *Mourning v. Family Publications Service, Inc.*, 411 U.S. at 369, 93 S.Ct. at 1660. This is precisely the type of enabling act applicable to the Veterans' Administration. *See* 38 U.S.C. § 210(c)(1).

revised the existing law in order to provide a sliding scale of benefits based on income. In determining income, Congress maintained the policy established through § 503, as previously discussed, to provide that income which had been waived would also be considered in computing financial need. The accompanying Senate Report discussed this provision as follows:

"This bill provides that all income which has been waived by the recipient is to be considered as the income of the beneficiary. There is no justification in the opinion of both the House and Senate committees for establishing income limitations in the law so as to provide a test for need for qualifying for pension, and at the same time permitting beneficiaries to create their own need so as to qualify for the benefit."

Sen.Rep.No.86–666, 86th Cong. 1st Sess. (1959), *reprinted in* [1959] U.S.Code Cong. & Ad.News 2190, 2193.

From 1959 until 1973, the VA did not include military retirement pay, which was waived by beneficiaries as required by § 3104, as income to those beneficiaries in computing annual income under § 503. In 1973, however, the VA implemented new regulations to require that waived military retirement benefits be included in the computation of annual income. *See* 38 CFR §§ 3.261 and 3.262. The issue presented is whether these revised regulations are reasonably related to the Congressional intent embodied in 38 U.S.C. § 503.

■ The cardinal rule of statutory construction is that the court should give effect to the intent of the legislative assembly. *N.L.R.B. v. Wheeling Electric Company*, 444 F.2d 783, 787 (4th Cir. 1971). The legislative intent which controls the court's analysis is that of Congress at the time the statute was enacted. *Cf. Oscar Mayer & Company v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979).

At first blush, it would appear that Congress intended under § 503 that waived income from any source, including military retirement pay, be included in computing annual income. The plaintiff, however, argues that despite the literal language of the statute, Congress never intended that waived military retirement pay be considered as income under § 503.

■ In considering the plaintiff's argument, the court is guided by the following principles set forth by the Supreme Court in *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940):

"There is, of course, no more persuasive evaluation of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole, this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of the words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination."

(Citations omitted). Thus this court will not follow the literal meaning of a statute when to do so would, in view of the purpose of the statute, lead to an absurd or unjust result. *Cf. N.L.R.B. v. Wheeling Electric Company*, 444 F.2d at 787; *Organized Migrants in Community Action, Inc. v. Brennan*, 520 F.2d 1161, 1166 (D.C.Cir.1975).

■ In the present case, the court must examine § 503 within the overall context of the VA benefit scheme. When scrutinized in that light, the court concludes that it would be inconsistent with the overall legislative intent to require that waived military retirement pay be considered as income in determining the amount of pension benefits to be awarded. Military retirement bene-

fits are in a different posture than other benefits, since other statutory provisions under Title 38 require that those benefits be waived in order to receive a pension. The legislative history of § 503 makes it clear that Congress sought to limit the availability of pension benefits to those who were truly needy. If a person could obtain income from any other source, he would have to do so before qualifying for pension benefits. In the case of military retirement pay, however, the veteran cannot first turn to this source of income since Congress has already determined that these benefits must be waived in order to receive a pension. This situation is distinguishable from those in which individuals waive benefits otherwise available and thereby "create their own need."

If § 503 were to apply to military retirement pay, then a needy veteran would receive a reduced pension on the basis of income which he is not eligible to receive. Such a construction would unjustly penalize veterans who were eligible for pension benefits and who were also entitled to military retirement pay due to either length of service or service-related disability. In enacting the VA benefit scheme, Congress sought to recognize and provide for those who served honorably in the military. It would be absurd to apply § 503 in a manner which would reduce benefits available to those who provided lengthy service or were disabled in service. The court therefore believes that Congress did not intend that military retirement pay, which is waived under § 3104, be considered as income in computing annual income under § 503.

The defendant argues that later Congressional pronouncements indicate that Congress was aware of this inequity and intended that it exist. Prior to the 1978 Improvement Act, the VA was ordered by Congress to conduct a study of the pension program then in effect. Pub.L.No. 94–432, § 404 (1976). In the VA's completed report, one of the deficiencies noted in the then existing pension program was the situation where a veteran was required to waive retirement pay which was then deemed to be income in computing pension benefits.

House Committee Print No. 79, 95th Cong., 2d Sess. 365–366. The defendant contends that Congress was aware of this discrepancy yet reenacted the same language in 1976 and therefore intended the anomalous result.

Although these facts lend some support to the defendant's position, the court believes that they are outweighed by other factors. As previously stated, it is the Congressional intent at the time the legislation was enacted which governs. As indicated, the court believes that, at the time of the 1959 revisions, Congress did not intend that § 503 apply to military retirement pay. In addition, from 1959 until 1973, § 503 was not construed to apply to military retirement pay. Finally, in 1980 Congress amended § 3104 to remove this discrepancy under the improved pension program.

The defendant stresses the fact that the 1980 amendment to § 3104 applies only to improved pensions. The defendant argues that the 1980 Congress intended that waived military retirement pay be considered only in computing Section 306 pensions in order to provide incentive to veterans to convert to the use of improved pension. The court finds this argument unpersuasive. If the prior pension program was not originally meant to create such an anomalous result, then a subsequent Congress cannot utilize erroneous interpretations as incentive to persuade veterans to opt into the improved pension program.

In summary, the court has considered the defendant's arguments that Congress intended § 503 to apply to military retirement pay, but the court finds those arguments unpersuasive. The legislative history of the 1959 statute, along with the overall purpose of the pension program, persuade the court that Congress never intended that § 503 apply to retirement pay which a veteran is required to waive under other sections of Title 38. Therefore, to the extent that 38 CFR §§ 3.261 and 3.262 require that a veteran's waived military retirement pay be included in the computation of annual income under § 503, the court finds that these

regulations are not reasonably related to the purposes of the enabling legislation and are therefore invalid.

### B. Is 38 U.S.C. § 503 Constitutional?

■ In light of the fact that the court has stricken the applicable sections of the regulations in question, it need not address the question of whether § 503 is violative of the plaintiff's due process and equal protection rights. The court, however, notes that the test to be applied in evaluating such a claim is whether the classification is rationally related to a legitimate governmental interest. *See, Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The test is not whether the statute, as applied to the individual plaintiff, relates to a legitimate governmental interest, but rather whether the classification created by the statute which encompasses the plaintiff is so related. As previously discussed, the legislative history clearly sets forth the basis upon which Congress decided to consider waived benefits, in general, as income to the pensioner. This overall classification would appear to be rationally related to a legitimate governmental interest. Therefore the court believes that the plaintiff would not prevail on this alternative basis for his claim.

### IV. Jurisdictional Analysis

In the plaintiff's prayer for relief, he seeks a writ in the nature of mandamus to compel the defendant to recalculate his benefits and to order that all benefits wrongfully withheld be paid. The defendant maintains that this relief is barred by the doctrine of sovereign immunity and is not properly within the mandamus jurisdiction of this court.

■ Before discussing these precise issues, it is necessary to examine the jurisdictional basis of this action. In general, administrative decisions come within the § 1331 jurisdiction of the courts and are subject to judicial review under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, except to the extent otherwise provided by statute. *Wayne State University v. Cleland*, 590 F.2d 627 (6th Cir. 1978). With regard to administrative decisions of the VA, however, 38 U.S.C. § 211(a) sets forth the following exception:

> "... the decisions of the Administrator on any question of law or fact, under any law administered by the Veterans' Administration providing benefits for veterans ... shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise."

The Fourth Circuit recently considered the implications of this statute in *The University of Maryland v. Cleland*, 621 F.2d 98 (4th Cir. 1980). Following the rationale of the Supreme Court in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) and *Hernandez v. Veterans' Administration*, 415 U.S. 391, 94 S.Ct. 1177, 39 L.Ed.2d 412 (1974), the Fourth Circuit held that § 211(a) did not apply to constitutional challenges to the acts of the VA administrator. Rather § 211(a) only precludes the review of individual claims. Therefore, in the present case, the court has jurisdiction under the APA to determine whether the administrator of the VA acted outside the scope of his authority in promulgating the regulations in question. While this court is empowered to invalidate regulations improperly enacted by the VA, the APA does not provide a jurisdictional basis for an award of individual monetary relief.

■ The plaintiff also asserts a right to relief under the mandamus statute pursuant to 28 U.S.C. § 1361. As previously set forth, however, § 211 specifically precludes review of an individual claim for benefits through an action in the nature of mandamus. Therefore, this court lacks any jurisdictional basis to enter an order granting an award of retroactive benefits in this case. Given this holding, the court need not address the parties' specific arguments re-

garding mandamus relief and sovereign immunity.[4]

### V. Conclusion

It is ORDERED this 3rd day of June, 1981, by the United States District Court for the District of Maryland, as follows:

(1) The VA's Motion to Dismiss (Paper 13) is GRANTED to the extent that the plaintiff's complaint seeks an award of benefits which were wrongfully withheld by the VA. The Motion to Dismiss is DENIED in all other respects.

(2) The plaintiff's Motion for Summary Judgment is GRANTED on the claim that the VA's acts in promulgating 38 CFR §§ 3.261 and 3.262 were contrary to the Congressional intent expressed in the VA benefit statutes as set forth in 38 U.S.C. §§ 503, 3104 (1979) and 3105. To the extent that 38 CFR §§ 3.261 and 3.262 require that military retirement benefits, waived pursuant to statute, be considered as income to a veteran in computing his or her eligibility for a Section 306 pension, those regulations are declared to be invalid.

---

**4.** Since the defendant is sued only in his official capacity, the court need not consider the question raised regarding the adequacy of service of process on him in his individual capacity.