593 A.2d 1109

**C. Elaine BRISCOE et al.**

**v.**

**PRINCE GEORGE'S COUNTY HEALTH DEPARTMENT et al.**

No. 82, Sept. Term, 1989.

Court of Appeals of Maryland.

Aug. 20, 1991.

---

440

Stephen M. Nassau (Statland, Nerenberg, Nassau & Buckley, on brief), Washington, D.C., for petitioners.

Paula I. Mell and Lawrence H. Mirel of The Greater Washington Soc. for Clinical Social Work, Inc., amicus curiae.

Carmen M. Shepard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Judith K. Sykes, Asst. Atty. Gen., on brief), Baltimore, for respondents.

Argued before ELDRIDGE, COLE *, RODOWSKY, McAULIFFE, ADKINS **, HOWARD S. CHASANOW (Specially Assigned), CHARLES E. ORTH, Jr., (retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

The petitioners are clinical social workers employed by the State of Maryland. The principal issues in the case are whether the State violated the Equal Protection Clause of the Fourteenth Amendment or Maryland Code (1957, 1988

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

Repl.Vol., 1990 Cum.Supp.), Art. 64A, § 27,[1] by paying the petitioners less than psychiatric nurses employed at the same facilities.

## I.

The original claimants were twelve clinical social workers employed by the State of Maryland at Community Mental Health Centers administered by the Prince George's County Health Department. These claimants filed an administrative grievance against the County Health Department and the State Department of Health and Mental Hygiene, alleging that the clinical social workers had the same responsibilities and performed essentially the same duties as psychiatric nurses at the Community Mental Health Clinics but were paid at a lower grade than the nurses.[2] They argued that under equal protection and due process principles, as well as under the State Merit System Law (Art. 64A), persons in positions involving comparable duties, experience, responsibilities and authority must be paid comparable salaries. The claimants requested that their salaries be upgraded to a level equivalent to that of the nurses and that they be awarded back pay.

After unsuccessfully pursuing their grievance through the initial steps of the State Employee Grievance Procedure,

---

1. Art. 64A, § 27, relates to the state "Pay Plan," The provision relied on by the petitioners is now contained in § 27(a)(1)(i), and states as follows:

   "(a) *Establishing plan; amendments to plan; executive pay plan.*—(1)(i) The Secretary shall recommend to the Governor a pay plan for all classified and unclassified positions for which the Secretary has authority to administer pay to the end that *all positions in the service involving comparable skills, knowledge, effort, responsibility, and working conditions shall be paid comparable salaries* in accordance with the relative value of the services to be performed." (Emphasis added).

2. At the Prince George's County Community Mental Health Centers, treatment is conducted by multi-disciplinary teams consisting of psychologists, social workers, and psychiatric nurses. It was alleged that the members of a team perform essentially the same duties, which primarily involve providing psychotherapy.

Art. 64A, §§ 52–57, the claimants appealed to the Department of Personnel. At a hearing before the Department of Personnel hearing officer, there was testimony from clinical social workers, psychiatric nurses, and other personnel at the Prince George's County Community Health Clinics. There was also testimony from other State-employed witnesses. Following the hearing, the Department of Personnel hearing officer issued her decision denying the grievance.

The hearing officer found that, at the Prince George's County Community Mental Health Clinics, a clinical social worker "functions basically the same as the psychiatric nurses." The hearing officer pointed to testimony that "cases are randomly assigned based on the availability of the therapist, who could be a psychiatric nurse, social worker or psychologist." The hearing officer also referred to testimony that a psychiatric nurse at the Prince George's County facilities spends only one percent of her time administering medication. The hearing officer, however, indicated that this situation was limited to Prince George's County facilities and did not exist elsewhere in the State.

As part of her findings of fact, the hearing officer quoted extensively from a study commissioned in 1986 by the Appropriations Committee of the House of Delegates and conducted by the Department of Personnel's Division of Salary Administration and Position Classification. The study focused on multi-disciplinary teams in use at Department of Health and Mental Hygiene facilities in order "to determine whether a single classification of Clinical Mental Health Therapist was appropriate for all persons performing clinical mental health therapy." The study concluded that at facilities across the State, other than the Prince George's County Mental Health Centers and the Regional Institute for Children and Adolescents in Rockville, Maryland, clinical social workers, psychiatric nurses, and psychologists "function[ed] within the boundaries of their discipline." The hearing officer further quoted from the study:

" 'To the extent, then, that there is a commonality of function of the professionals in the mode of operation in the outpatient clinic and Regional Institute for Children and Adolescents, it is reflective of psychologists and nurses performing duties related to social services rather than reflection of social workers performing duties of nurses or psychologists, or reflective of functions (such as psychotherapy) which have been common to all these professionals.

" 'Under this circumstance, we do not recommend creating a single classification of Clinical Mental Health Therapist spanning all three professions. A new Clinical Social Worker classification may however be helpful in securing an applicant with background particularly relevant for clinical work as described above.' " [3]

The Hearing Officer also noted: "In the expert opinion of the classification analysts, the social workers were not being overutilized or undercompensated; the psychologists and nurses were being underutilized and overcompensated." The hearing officer stated that the Classification Study "in no way supports an additional salary adjustment for the" claimants.

The hearing officer concluded that "the grievants had the burden of proving that management violated a law or regulation or acted arbitrarily in denying a ... salary adjustment for the [claimants] to establish equity with the ... Nurse series," and that the claimants had failed to meet their burden. The hearing officer also indicated that, to the extent that the claimants' request for a salary adjustment might involve an amendment to the State Pay Plan under Art. 64A, § 27, such an amendment would relate to an

---

**3.** The claimants have conceded that their grievance applies only to clinical social workers at the Prince George's County Mental Health Centers and the Regional Institute for Children and Adolescents in Rockville. Thus, they are not requesting an upgrade in salary for the entire state-wide clinical social worker classification.

entire class and must be approved by the Governor.[4]

The claimants then filed this action in the Circuit Court for Montgomery County to obtain judicial review of the Department of Personnel's decision. Shortly thereafter, seven clinical social workers employed at the Regional Institute for Children and Adolescents in Rockville moved to intervene as additional plaintiffs, asserting that they were situated similarly to the original twelve plaintiffs. Over the objection of the defendants, the circuit court granted the motion to intervene.

The circuit court, after a hearing, reversed the Department of Personnel's decision. The court ordered the Secretary of Personnel to reclassify the plaintiffs either to an existing or a new classification equivalent in salary to that of the psychiatric nurses. In addition, it was ordered that the plaintiffs be paid salaries equivalent to those of the Community Health Nurse IV classification, that the Secretary of Personnel consider awarding back pay, and that the defendants pay the plaintiffs' attorney's fees. The circuit court issued no written opinion, and the remarks of the circuit judge at the hearing do not make the basis for his ruling entirely clear. It would appear from his remarks that the circuit judge agreed with the plaintiffs' equal protection argument.

The Prince George's County Department of Health and the State Department of Health and Mental Hygiene filed an appeal, and the Court of Special Appeals reversed. *Prince George's County v. Briscoe,* 79 Md.App. 325, 556 A.2d 742 (1989). In response to petitioners' constitutional

---

4. Maryland Code (1957, 1988 Repl.Vol., 1990 Cum.Supp.), Art. 64A, § 27(a)(1)(iv) provides in relevant part as follows:

"(iv) 1. The Secretary, with the approval of the Governor, may amend the pay plan for specific classifications of positions in order to recruit or retain competent personnel or to ensure that compensation rates adequately compensate the skills, knowledge, effort, responsibility, and working conditions.

arguments, the intermediate appellate court held that the difference in pay scale between the social workers and the nurses had a rational basis and, therefore, did not constitute a denial of equal protection or of due process. With regard to the plaintiffs' reliance upon the provision of Art. 64A, § 27(a)(1)(i), stating that "all positions in the service involving comparable skills, knowledge, effort, responsibility, and working conditions shall be paid comparable salaries," the Court of Special Appeals initially indicated that this provision is part of the section relating to the State Pay Plan. The appellate court then held that the Pay Plan related to statewide classes and not individual positions, that any changes in the Pay Plan must be approved by the Governor, and that the hearing officer had no power to effect a modification in the Pay Plan. As to the plaintiffs' reliance upon Art. 64A, § 16(b), which authorizes the Secretary of Personnel to take corrective action when a position is inappropriately classified, the Court of Special Appeals held that plaintiffs had failed to argue at the administrative level that they were entitled to reclassification under § 16(b).[5] The

---

"2. An amendment may not take effect unless sufficient funds have been included within the budget for that purpose."

\* \* \* \* \* \*

5. Art. 64A, § 16(b), states as follows:

"(b) In order to insure that positions in the Maryland State service are properly classified, the Secretary shall periodically audit a random sample of all positions under his salary jurisdiction. The Secretary may order a State department or agency to take appropriate action to bring any position determined to be inappropriately classified into compliance with the audit and findings of the Secretary. A filled position which is declared to be underclassified shall be reclassified immediately or not later than the beginning of the next fiscal year following the determination. A filled position which is declared to be overclassified shall be reclassified at the end of the second fiscal year after which the determination is made, and any incumbent shall be reduced in rank appropriately. Any employee holding a position which is declared to be overclassified shall be given the right to grieve under the Department's administrative appeal proceedings."

See also Art. 64A, §§ 54(c) and 54(d), which provide as follows:

"(c) Reclassifications—In any reclassification grievance, if the matter is not resolved at the second step and the employee files an

appellate court alternatively held that the plaintiffs had not shown at the administrative hearing that they had been misclassified or that they should be reclassified. Lastly, the Court of Special Appeals held that permitting the intervention of the Rockville social workers had been improper because they had failed to exhaust their administrative remedies, and that the award of attorney's fees to the plaintiffs had been erroneous.

Thereafter, we granted the plaintiffs' petition for a writ of certiorari.

## II.

The plaintiffs' principal argument in this Court is that the State's classification scheme which pays clinical social workers such as the plaintiffs less than psychiatric nurses constitutes a denial of the Equal Protection Clause of the Fourteenth Amendment.[6]

In a case such as this, the standard of review for equal protection analysis is the rational basis test. *See, e.g., Hargrove v. Board of Trustees*, 310 Md. 406, 416–422, 529 A.2d 1372, 1377–1380 (1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766 (1988); *Broadwater v. State*, 306 Md. 597, 604–608, 510 A.2d 583, 586–588 (1986); *Ennis v. State*, 306 Md. 579, 595, 510 A.2d 573, 581 (1986); *Attor-*

---

appeal to the Secretary of Personnel, the Secretary shall require an audit of the position to determine if the position is appropriately classified, if no audit has been performed within the last year.

"(d) *Back pay based on misclassification.*—In any reclassification case in which the Secretary of Personnel or his authorized representative determines that an employee is entitled to back pay because the employee has been misclassified or has been working out of classification, the Secretary may, in his discretion, award back pay to the employee for a period not to exceed one year prior to the initial filing of the grievance."

**6.** The plaintiffs do not specifically invoke the equal protection principle embodied in Article 24 of the Maryland Declaration of Rights.

Furthermore, while the plaintiffs claim that they perform the same duties as both psychiatric nurses and psychologists at the institutions at issue, they do not argue that they should be paid the same as the psychologists.

*ney General v. Waldron,* 289 Md. 683, 706–707, 426 A.2d
929, 942 (1981); *Board v. Goodsell,* 284 Md. 279, 286, 396
A.2d 1033, 1037 (1979); *Governor of Maryland v. Exxon
Corp.,* 279 Md. 410, 439, 370 A.2d 1102, 1118 (1977), *aff'd,*
437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). The
plaintiffs, in fact, concede that the rational basis test is
appropriate here.

As we have stated, "[a] statutory classification tested by
the rational basis standard enjoys a strong presumption of
constitutionality and a reasonable doubt as to its constitu-
tionality is sufficient to sustain it." *State v. Good Samari-
tan Hospital,* 299 Md. 310, 328, 473 A.2d 892, 901, *appeal
dismissed,* 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 7 (1984).
*See, e.g., Hargrove v. Board of Trustees, supra,* 310 Md. at
423, 529 A.2d at 1380; *Whiting–Turner Contracting Co. v.
Coupard,* 304 Md. 340, 352, 499 A.2d 178, 185 (1985);
*Board v. Goodsell, supra,* 284 Md. at 286, 396 A.2d at 1037.
The rational basis test was summarized in *Attorney Gener-
al v. Waldron, supra,* 289 Md. at 707, 426 A.2d at 942, as
follows:

"Using [the rational basis] approach, a statutory classifi-
cation is struck down, in the oft-expressed words of the
Supreme Court, only if the means chosen by the legisla-
tive body are 'wholly irrelevant to the achievement of the
State's objective.' *McGowan v. Maryland,* 366 U.S. 420,
425, 81 S.Ct. 1101 [1105], 6 L.Ed.2d 393 (1961); *McDonald
v. Board of Election,* 394 U.S. 802, 809, 89 S.Ct. 1404
[1408–09], 22 L.Ed.2d 739 (1969). The Supreme Court, in
applying this test, has been willing to uphold the constitu-
tionality of an enactment when 'any state of facts reason-
ably, may be conceived to justify it.' *McGowan v. Mary-
land, supra* at 426 [1105]. See *Holt Civic Club v. City
of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292
(1978); *Kotch v. Pilot Comm'rs,* 330 U.S. 552, 67 S.Ct.
910, 91 L.Ed. 1093 (1947). This deferential review of
state legislative classifications operates, at least in the
sphere of economic regulation, 'quite apart from whether
the conceivable "state of facts" (1) actually exists, (2)

would convincingly justify the classification if it did exist, or (3) has ever been urged in the classification's defense by those who either promulgated it or have argued in its support.' "

*See also United Wire v. State Deposit Ins. Fund,* 307 Md. 148, 158–159, 512 A.2d 1047, 1052 (1986); *Department of Transportation v. Armacost,* 299 Md. 392, 412–413, 474 A.2d 191, 201 (1984); *Board v. Goodsell, supra,* 284 Md. at 286, 396 A.2d at 1037; *Governor of Maryland v. Exxon Corp., supra,* 279 Md. at 439, 370 A.2d at 1118; *Bowie Inn v. City of Bowie,* 274 Md. 230, 241, 335 A.2d 679, 686 (1975).

Furthermore, "[t]he test is not whether the statute, as applied to the individual plaintiff, relates to a legitimate governmental interest, but rather whether the classification created by the statute which encompasses the plaintiff is so related." *Peed v. Cleland,* 516 F.Supp. 469, 476 (D.Md. 1981). Legislation which creates different classes of public employees, and treats each class differently, does not violate the Equal Protection Clause unless "the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *Montgomery County v. Walsh,* 274 Md. 502, 525, 336 A.2d 97, 111–112 (1975), *appeal dismissed,* 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976). *See Abbott v. Administrative Hearing Bd.,* 33 Md.App. 681, 688, 366 A.2d 756, 760 (1976), *cert. denied,* 280 Md. 727 (1977).

Turning to the present case, it is clear that there is a rational basis for the classification drawn by the State between the psychiatric nurses and the clinical social workers. Thus, the classification does not violate equal protection principles.

■ As the Department of Personnel hearing officer noted, the Appropriations Committee of the Maryland House of Delegates commissioned a study to evaluate the validity of the distinctions drawn between clinical social workers and psychiatric nurses. The study concluded that: (1) except in the facilities at issue, psychiatric nurses and

clinical social workers in in-patient facilities across the state functioned within the characteristics of their job classifications; (2) psychologists and psychiatric nurses at the Prince George's Mental Health Clinics and the Regional Institute for Children and Adolescents were performing social services tasks; (3) clinical social workers at these facilities were not performing tasks unique to the psychiatric nurse or psychologist classification; and (4) clinical social workers at the facilities at issue were not being overutilized or underpaid, but, rather, psychologists and psychiatric nurses were being underutilized and overpaid.

State employee classifications have traditionally been drawn on a state-wide basis. Moreover, in *Ball v. Board of Trustees of State Colleges*, 251 Md. 685, 691, 248 A.2d 650, 653–654 (1968), this Court held that the "classes" and "classifications" contemplated by Art. 64A mean a "state-wide classified service system" which is the same whether the employment is "performed at Morgan State College, Frostburg State College, the Maryland House of Correction or elsewhere." The record in this case clearly shows that clinical social workers and psychiatric nurses generally perform different functions in facilities across the State. The fact that in one county, and in one facility in another county, the psychiatric nurses perform basically the same functions as clinical social workers does not deprive the classification of a rational basis.

Additionally, clinical social workers and psychiatric nurses have different qualifications. Because the nurses are qualified to perform patient care services, the State legitimately may value their services more highly. Assuming that the psychiatric nurses and clinical social workers at the Prince George's County Mental health centers and the Regional Institute for Children and Adolescents primarily perform psychotherapy, the nurses are still capable of, and occasionally do perform, other patient care services. The clinical social workers are not able to evaluate patients physically or to administer medication as the nurses are. Also, while the plaintiffs emphasize that a Master's Degree

is required for all social workers while only a Bachelor's Degree is required for the psychiatric nurses, this statement is not entirely accurate. Several levels within the nurse classification also require a Master's Degree.

Article 64A, § 27(a), requires only that comparable salaries be paid "in accordance with the relative value of the services to be performed." In light of the difference in the ability to provide patient care, and the conclusions of the 1986 Department of Personnel study, the State had a rational basis for differentiating between the psychiatric nurses and the clinical social workers. The State could reasonably conclude that the value of the services performed by the nurses was greater.

The plaintiffs cite several cases in support of their equal protection argument. The first is *Wood v. Mills*, 528 F.2d 321 (4th Cir.1975). The *Wood* case provides no support for the plaintiffs' position in the case at bar. In *Wood*, prison matrons, who possessed the same qualifications and performed the same tasks as their male counterparts, were being paid at a lower scale. This was found to be unconstitutional sex discrimination. Although sex has not been deemed a suspect classification under the Equal Protection Clause of the Fourteenth Amendment, the Supreme Court has stated that it is to be subject to heightened scrutiny. *Craig v. Boren*, 429 U.S. 190, 197–199, 97 S.Ct. 451, 457–458, 50 L.Ed.2d 397 (1976). *See Stanton v. Stanton*, 421 U.S. 7, 13–18, 95 S.Ct. 1373, 1377–1379, 43 L.Ed.2d 688 (1975); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648, 95 S.Ct. 1225, 1233, 43 L.Ed.2d 514 (1975); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Eslinger v. Thomas*, 476 F.2d 225, 230–231 (4th Cir.1973). The rational basis test is not applicable in such cases. Moreover, the State is much less likely to have a valid justification for discriminating on the basis of sex than it does in differentiating between classes of State employees based on different

occupations.[7]

The plaintiffs also rely upon two New York cases, *Weissman v. Evans,* 56 N.Y.2d 458, 452 N.Y.S.2d 864, 438 N.E.2d 397 (1982), and *Weissman v. Bellacosa,* 129 A.D.2d 189, 517 N.Y.S.2d 734 (1987), which concerned enactments by the New York legislature classifying judges as state employees. The result was that the salaries of the judges would be set by the state. Previously, judges had been paid by the localities where they presided, resulting in salary discrepancies among judges performing the same work. After the passage of the new statutes, the state created a salary scale which incorporated the preexisting inequalities in salary. The judges who were adversely affected brought suit, claiming that the salary scale constituted a denial of equal protection. The New York courts agreed, stating that there was no rational basis for paying different salaries to judges who were equally qualified, performed the same work, and presided in counties with similar conditions. The New York judges were members of the same profession and performed the same functions. In the present case, however, social workers and nurses are not members of the same profession. In addition, they generally do not perform the same functions.

The plaintiffs also cite *State ex rel. Longanacre v. Crabtree,* 350 S.E.2d 760 (W.Va.1986). The facts in that case were that the State of West Virginia had set a salary scale for magistrates based on the population size of the county served by the magistrate. The law, however, made an exception for five counties and expressly set the salaries in those counties at a specific rate. Magistrates in counties with populations similar to those of the excepted counties,

---

**7.** In Maryland, of course, because of Article 46 of the Maryland Declaration of Rights, gender-based classifications are suspect and are subject to strict scrutiny. *State v. Burning Tree Club, Inc.,* 315 Md. 254, 295–296, 554 A.2d 366, 387, *cert. denied,* —— U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). Consequently, a classification based on gender is in no way comparable to an employment classification based on different occupations.

who were being paid at a lower rate, argued that this scheme violated equal protection principles. Using a rational basis analysis, the Supreme Court of West Virginia agreed.[8] As in the New York cases, *Crabtree* involved the payment of different salaries to members of the same profession, performing the same duties. That is not the situation presented by the case at bar.

For the reasons set forth above, we agree with the Court of Special Appeals that the plaintiffs were not denied equal protection of the laws.

The plaintiffs also claim that the difference in classification between the clinical social workers and psychiatric nurses "is a violation of their right to substantive due process." This argument is based on an asserted lack of a rational basis for the classification, and it is identical to the plaintiffs' equal protection argument. Consequently, we need not address the argument separately. We reject it for the same reasons.

### III.

We now turn to the plaintiffs' argument that, under Art. 64A, they were entitled to be reclassified and that the hearing officer erred in failing to reclassify them.

Preliminarily, we agree with the hearing officer and the Court of Special Appeals that, to the extent that the relief being sought by the plaintiffs involves an amendment to the State Pay Plan under Art. 64A, § 27, such relief cannot be obtained through the grievance procedure. The actions of the Secretary of Personnel under § 27 are subject to the approval of the Governor.

On the other hand, the general principle set forth in § 27, that positions of "comparable duties, experience, responsi-

---

**8.** The West Virginia Legislature subsequently removed the unconstitutional exception from the magistrate salary schedule. The magistrates then brought suit claiming that a population based salary scheme violated equal protection principles. The Supreme Court of West Virginia disagreed, holding that such a system has a rational basis. *State ex rel. Moody v. Gainer,* 377 S.E.2d 648 (W.Va.1988).

bilities and authority shall be paid comparable salaries," enunciates a public policy that the Department of Personnel has applied in grievance proceedings. The principle has been used by the Department of Personnel as a basis for determining, in a grievance proceeding, that certain positions had been misclassified and should be reclassified. *See, e.g., Frosburg v. State Dep't of Personnel,* 37 Md.App. 18, 375 A.2d 582, *cert. denied,* 281 Md. 737 (1977); *Drivers License Reviewers,* Grievance Cases # G–225 and G–475 (September 4, 1975); *Donald M. Ayers,* Grievance Case # G–2210 (September 25, 1981). This was fully understood by the hearing officer in the present case who denied the plaintiffs' grievance on its merits. Moreover, we disagree with the Court of Special Appeals concerning what the plaintiffs raised before the hearing officer. We believe that the plaintiffs in substance fully raised the matter of misclassification and reclassification pursuant to Art. 64A, §§ 16(b) and 54(c) and (d).

The plaintiffs do not contend that any factual finding of the hearing officer in this case was arbitrary or unsupported by substantial evidence. Instead, their argument is that the undisputed evidence before the hearing officer showed that the State has violated the principle contained in Art. 64A, § 27, providing that positions of comparable duties, experience, responsibilities and authority shall be paid comparable salaries. According to the plaintiffs, the hearing officer's conclusion that this principle was not violated constituted an error of law.

The entire factual basis for the plaintiffs' State law argument is the same as the foundation for their equal protection argument, namely that at the Prince George's County and Rockville facilities the clinical social workers and the psychiatric nurses basically perform the same functions.

Consequently, for the same reasons delineated in Part II above, the hearing officer was warranted in concluding that the plaintiffs' pay was not in violation of the comparability

principle embodied in Art. 64A. The positions of clinical social workers and psychiatric nurses involve different professions with different qualifications. The nurses have the capability of performing functions which the social workers cannot perform should the need arise. Moreover, merit system classifications are on a statewide basis, and generally throughout the State clinical social workers and psychiatric nurses do not perform the same functions or duties. Finally, the evidence supports the conclusion that, in Prince George's County and Rockville, the psychiatric nurses are being overpaid rather than the clinical social workers being underpaid. In light of these factors, a reviewing court could not reasonably conclude that the Department of Personnel's decision was erroneous as a matter of law.[9]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED EXCEPT AS IT RELATES TO THE CIRCUIT COURT'S ORDER PERMITTING INTERVENTION. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR MODIFICATION OF ITS JUDGMENT INSOFAR AS IT REVERSES THE ORDER PERMITTING INTERVENTION. PETITIONERS TO PAY COSTS.

---

9. The parties have also raised in this Court issues concerning the trial court's award of attorney fees and the trial court's order permitting intervention.

Since we agree with the Court of Special Appeals' reversal of the circuit court's decision on the merits, there is no need to discuss at length the matter of attorney fees. As the plaintiffs are no longer the prevailing party, there clearly is no basis for an award of attorney fees. In this connection, *see also Talley v. Talley,* 317 Md. 428, 438–439, 564 A.2d 777, 782 (1989); *Empire Realty Co. v. Fleisher,* 269 Md. 278, 285–286, 305 A.2d 144, 148 (1973), and cases there cited.

The reversal of the circuit court's decision on the merits makes it unnecessary for us to consider the defendants' argument that the circuit court's order allowing intervention was improper. Moreover, there is now no reason for the Court of Special Appeals' mandate to reverse the intervention order. Presumably the defendants have no objection to a judgment on the merits in the defendants' favor and against all of the plaintiffs.