**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeanine M. BIOCIC,**
**Defendant–Appellant.**

**No. 90–5630.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1990.

Decided March 13, 1991.

As Amended May 6, 1991.

John Patrick McGeehan, McGeehan & Associates, P.C., Fairfax, Va., argued (Alan Rosenblum, Rosenblum & Rosenblum, Alexandria, Va., on brief), for defendant-appellant.

David Paul King, Asst. U.S. Atty., argued (Breckinridge L. Willcox, U.S. Atty., Richard Kay, Sp. Asst. U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

PHILLIPS, Circuit Judge:

Jeanine Biocic appeals her conviction for violating a United States Fish and Wildlife regulation, 50 C.F.R. § 27.83, by going partially nude in a national wildlife refuge. She contends on various grounds that the regulation is unconstitutional as applied to her. We affirm the conviction.

I

On a summer day in June of 1989, Ms. Biocic, an adult female, was walking on the beach on the Chincoteague National Wildlife Refuge in Accomack County, Virginia, with a male companion. "To get some extra sun," as she put it, she removed the top of her two-piece bathing suit, fully exposing her breasts. She was observed in this state of partial nudity by an officer of the federal Fish and Wildlife Service who issued her a summons charging a violation of 50 C.F.R. § 27.83, which provides that

> [a]ny act of indecency or disorderly conduct as defined by State or local laws is prohibited on any national wildlife refuge.

A magistrate judge convicted Ms. Biocic of violating this regulation after a trial in which the facts above summarized were established without essential dispute. Specifically, the magistrate judge concluded that Ms. Biocic's conduct constituted an "act of indecency" within the meaning of § 9.3 of the Accomack County Code. In relevant part, that "anti-nudity" ordinance, following a Preamble which recites that the enacting body "deems it necessary to prohibit certain conduct ... in order to secure and promote the health, safety and general welfare of the [county's] inhabitants," makes it

> unlawful for any person to knowingly, voluntarily, and intentionally appear ... in a place open to the public or open to public view, in a state of nudity.

"State of nudity" is then defined in a definitional section as

> a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering on any portion thereof below the top of the nipple.

"Nudity" as thus defined is expressly excluded from the ordinance's reach when practiced in dramatic productions and other forms of legitimate artistic expression.[1]

The magistrate judge concluded that Ms. Biocic's exposure of her breasts in a way which fell within the County Code's express prohibition of this form of nudity constituted an "act of indecency" as defined by local law, hence violated the federal regulation. He fined her $25.00.

This conviction was affirmed on appeal to the United States District Court, 730 F.Supp. 1364, and Ms. Biocic then took this appeal.

## II

At various stages of this case, Ms. Biocic has raised a number of challenges, constitutional and non-constitutional, to the application of this federal regulation, assimilating the local law's definition of prohibited conduct, to convict her. These seem to have included a first amendment overbreadth claim, a due process vagueness claim, an equal protection claim, and a hybrid "privacy-penumbra"/ninth amendment claim. On this appeal, she seems to have confined her challenges to: (1) a claim of vagueness, in violation of the due process clause; (2) a claim of denial of equal protection in violation of the due process clause; and (3) a claim apparently grounded in the privacy jurisprudence of *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), which specifically invokes the ninth amendment's "guarantee of personal liberty rights."

We take these in the order listed.

## A

■ The vagueness claim may have both constitutional and non-constitutional prongs. Both (if there be two) are grounded in the point that § 9.3 of the local ordinance does not purport to punish "indecen-

cy," but only "public nudity," which in turn it nowhere defines as "indecency." From this, the literalist argument runs, the conduct which § 9.3 proscribes may not properly be considered "an act of indecency ... as defined by local law" within contemplation of 50 C.F.R. § 27.83.

Whether considered as merely a non-constitutional lenity argument, or as one asserting due process vagueness (the government's interpretation), we are not persuaded by it.

The issue, viewed from either perspective, is whether one clearly on notice that local law proscribes the exact state of semi-nudity conceded here is fairly on notice that it may also be proscribed by the federal regulation as an "act of indecency" within contemplation of the local law.

This question is subject to any amount of semantic quibbling, and has produced a good deal here, but in the end we agree with the magistrate judge that "common sense" compels an affirmative answer. Indeed, the legal test of statutory vagueness is one that is expressed essentially in terms of common sense. This stems from the reason for the law's special concern with ambiguity in criminal statutes: that such laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Master Printers of America v. Donovan*, 751 F.2d 700, 710 (4th Cir.1984) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972)).

Given the ultimate ambiguity of any written text, the test whether a particular one is sufficiently ambiguous that it fails to give such an opportunity—is impermissibly "vague"—is necessarily a practical rather than hypertechnical one. It asks the commonsensical question whether the text "conveys sufficiently definitive warning as to the proscribed conduct when measured by common understanding and practices." *Master Printers of America*, 751 F.2d at 711 (quoting *United States v. Petrillo*, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91

---

**1.** As Ms. Biocic's brief notes, this ordinance was adopted in 1984 to deal with a growing problem of nudity in public areas of the Refuge. The

Refuge was then attracting upwards of 2,000,-000 visitors a year, many of whom found the conduct objectionable.

L.Ed. 1877 (1947)). This test of course necessarily assumes a person of ordinary intelligence who is aware of the text (ignorance of it being "no excuse").

To apply the test here, we therefore start by assuming a person of ordinary intelligence looking at these two texts for guidance as to permitted and prohibited conduct within the Chincoteague National Wildlife Refuge. And we ask the question whether such a person, reading these texts in the light of "common understanding and practice," would be sufficiently warned that fully exposing female breasts in "a place open to public view" was prohibited by the federal regulation because it was implicitly identified in the county ordinance as an "act of indecency."

We think, as did the magistrate judge and the district judge, that only a person refusing to apply common understanding in the matter would fail to be so warned. In common understanding and practice the only reason for prohibiting public nudity by law is because of the perception (right or wrong) that it is "indecent." No other reason is apparent in common understanding and practice in this society. The "plain meaning," see United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), of the word "indecency" includes the notions of being "[o]ffensive to common propriety; offending against modesty or delicacy...." Black's Law Dictionary 691 (5th ed. 1979). It is therefore inconceivable that a person of ordinary intelligence in this society (whatever might be the case elsewhere) would fail to appreciate that an ordinance banning public nudity did so because it was considered "offensive to common propriety ... and against modesty," hence, by commonly accepted definition of the term, was thought to be "indecent." Only willful

blindness could fail to appreciate that; and willful blindness is no more an excuse than bald ignorance. Cf. South Florida Free Beaches v. City of Miami, 734 F.2d 608, 611 (11th Cir.1984) (word indecent "certainly applies to public nudity").

These texts, construed together under the appropriate test, sufficiently warn that public nudity such as that conceded here is prohibited by the federal regulation, hence do not offend due process guarantees nor invoke principles of lenity in the construction of the regulation's reach.

## B

Ms. Biocic's equal protection claim [2] is equally simple: the ordinance (hence, presumably, the federal regulation that assimilates its "definition" of indecency) prohibits the public exposure of female breasts but not male breasts; this constitutes a gender-based distinction that is not substantially related to an important governmental interest, hence fails the appropriate intermediate level of scrutiny in equal protection analysis.

We assume, without deciding, as did the district court, that a distinction based upon anatomical differences between male and female is gender-based for equal protection analysis purposes.[3] But we then agree with the district court that the distinction here is one that is substantially related to an important governmental interest, hence does not deny equal protection.

The important government interest is the widely recognized one of protecting the moral sensibilities of that substantial segment of society that still does not want to be exposed willy-nilly to public displays of various portions of their fellow citizens' anatomies that traditionally in this society

---

**2.** This claim was erroneously ascribed by Ms. Biocic to the fourteenth amendment's protection. Because it challenges federal rather than state law, it should of course have been asserted under the due process clause of the fifth amendment. Bolling v. Sharp, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). The error in assumption is of no moment, however; the analysis is essentially the same under either source.

**3.** The government argues that because the anatomical differences between male and female make the two incapable of "equal" treatment in the respect at issue, there is no denial of equal protection; that this is simply unequal treatment of unequals, which does not involve invidious discrimination. See Wood v. Mills, 528 F.2d 321, 323 (4th Cir.1975). We pass the issue for purposes of this appeal.

have been regarded as erogenous zones. These still include (whether justifiably or not in the eyes of all) the female, but not the male, breast.[4]

That does it, for the limited purpose of our legal inquiry. As Justice Stewart put it:

> [W]e have recognized that in certain narrow circumstances men and women are not similarly situated; in these circumstances a gender classification based on clear differences between the sexes is not invidious, and a legislative classification realistically based upon those differences is not unconstitutional.

*Michael M. v. Sonoma County Superior Court,* 450 U.S. 464, 478, 101 S.Ct. 1200, 1209, 67 L.Ed.2d 437 (1981) (Stewart, J., concurring).

### C

■ Ms. Biocic's final challenge, as indicated, seeks to invoke the ninth amendment's "guarantee of personal liberty rights," in particular the rights to privacy and personhood famously recognized in the line of cases represented by *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).[5]

Though she attempts to narrow her claim to protection of the particular ("discrete") way in which she acted, her essential effort is to equate a right to public nudity at the whim of the actor to the profound rights of personhood and privacy recognized in *Griswold* and *Roe.* To do so, she invites our attention to the similarity between the feelings of "wholesomeness," "peace of mind in being in the natural," and "free-spiritedness" which her discrete and only partial nudity gave her, and the comparable feelings of well-being and freedom protected as fundamental liberty interests in *Griswold* (right to use of contraceptives), and *Roe v. Wade* (right to abortion). This is a valiant and colorful try, but it has long been flatly rejected, *see, e.g., Richards v. Thurston,* 424 F.2d 1281, 1285 (1st Cir. 1970) ("the right to appear au naturel at home is relinquished when one sets foot on a public sidewalk"); L. Tribe, *American Constitutional Law* 1412 (1988) (no right to appear nude "on the main street at high noon"); *see also Roth v. United States,* 354 U.S. 476, 512, 77 S.Ct. 1304, 1323, 1 L.Ed.2d 1498 (1957) (Douglas, J., dissenting) ("No one would suggest that the First Amendment permits nudity in public places"), and we are not prepared to depart from that view of the matter at this point.

AFFIRMED

MURNAGHAN, Circuit Judge, concurring:

My colleagues on the panel have argued that "commonsense" must prevail over "literalism" given the "ultimate ambiguity of any written text."[1] The panel majority

---

4. Ms. Biocic attacks the basic premise that this is an accurate assessment of the current state of moral sensibilities on the matter. She cites in support of the contrary proposition a number of extra-legal sources, including *Sports Illustrated,* that seem to indicate a growing, perhaps already achieved, acceptance by many of the "state of nudity" here in issue. And she points to the undeniable fact that the female breast has from time immemorial been the subject of high artistic expression in great, publicly displayed sculpture and painting.

  That public morals are not static in this realm, and that artistic depictions of the female breast have indeed long been accepted, cannot be gainsaid. But for our limited purpose—which is only to inquire whether intentional exposure of the full female breast in public places at the whim of the actor is at this time constitutionally protected against any govern-

mental restrictions—the two points are beside the point.

5. We need not quibble with Ms. Biocic's apparent view that the ninth amendment is itself a source of those rights; it has been recognized as at least the source of a rule against cramped construction of rights specifically enumerated elsewhere. *See Griswold,* 381 U.S. at 486–99, 85 S.Ct. at 1684–90 (Goldberg, J., concurring).

1. The regulation under which prosecution of Biocic was brought, 50 C.F.R. § 2782, made criminal "indecency or disorderly conduct *as defined by State or local laws.*" The indecency was deemed by the magistrate judge, in light of an Accomack County Code provision, to mean nudity, defined as "showing of the female breast."

  Yet the magistrate at the same time soundly rejected, with no correction from any higher

has gone on to conclude that any person, here in particular Jeanine Biocic, applying common understanding to the federal regulation finding applicable local "indecency" laws and the county ordinance "prohibiting public nudity" could not fail but to be warned of the illegality of removing the top of a woman's bathing suit in an area open to the public, even without members of the public present. But such supposed widespread public understanding does not equal the precision of the written word which a criminal prohibition should provide.

An increasingly large number of persons comprising the body politic does not agree with the definition of indecency. While I have substantial doubts as to how long the almost-everyone-feels-that-way attitude will prevail, bearing in mind how rapidly the country passed through the era in the 1890s when men first began to swim bare breasted or the demise of the necessity for women to wear stockings and shoes while swimming, I acknowledge that, as of the moment, the predominant belief as to what constitutes propriety and indecency relied on by the majority still endures. A dissent, therefore, would not be appropriate.

Nonetheless, I write to express my belief that commonsense, relied on so heavily to excuse the lack of plain meaning of language, is exactly what has been missing in the prosecution of Biocic. It seems to me questionable in the extreme to rely on a popular interpretation to construe the words of a regulation to convict when no human beings, other than an entirely willing companion and a federal Fish and Wildlife Service officer, were present and Biocic was offered no opportunity to replace her top.

Furthermore, the majority's decision can hardly be read to hold that all actions resulting in "nudity" are illegal. Some would raise more difficult problems of "vagueness"; others would not result in a holding of criminality. Though logic has impelled the prosecution to insist that the law admits of no exceptions, it is literally beyond comprehension to conceive that a mother of a two-year old infant, even on a heavily populated beach would be hauled into federal court for changing a diaper in response to a call of nature. The same thing I daresay would be true in the case of a three-year old openly relieving himself or herself, or a four-year old cavorting stark naked at the water's edge. And what of a woman wearing a one-piece bathing suit who lowers her suit to remove an offending piece of slime from her stomach area? Or a man who, upon viewing no one in the vicinity, finds the lure of the water undeniable, and begins to change into bathing trunks? In its zeal, the prosecution, with a straight face, classifies such hypothetical occurrences as crimes. Criminal "indecency," the language involved, involves concepts of offensiveness and public outrage at the behavior. Only those aspects of public nudity prohibited by the statute which are also "indecent" or "offensive" can be made illegal by the federal regulation. I submit that the above examples could not so be found.

The fact in the present case which is relied on to remove Biocic from the "decent" acts of public nudity appears in a parenthetical comment by the district court judge: "Apparently, nude and semi-nude sunbathing in this area of the Refuge is of sufficient frequency as to warrant regular

judicial authority, the government's claim that Biocic's conduct amounted to indecent exposure under Virginia law. The magistrate found that Virginia law requires that "the display and exposure of the person or his or her private parts be 'obscene.'" He concluded, "Defendant's conduct certainly did not have as its dominant theme or purpose any appeal to the 'prurient,' 'shameful,' or 'morbid' interest in sex; on the contrary, it was apparently wholesome (defendant testified she wanted to get some 'extra sun') in its intent and purpose and was carried out relatively discreetly and circumspectly." To me, it appears an almost equal violation of language

to equate "nudity" with the operative word of the regulation: indecency.

Biocic has not pursued her First Amendment argument, apparently accepting the district court judge's finding that her conduct was "utterly lacking in any speech element." Had she raised a more valid First Amendment claim based on expression, I note that a conviction for indecency which was not obscene would fail because "expression which is indecent but not obscene is protected by the First Amendment." *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989).

patrols devoted to ticketing participants." Biocic, although she was first careful to scan the scene in an attempt to insure no one would be offended, decided to remove her top in an area where members of the public who might be potentially offended *might* venture upon her in her state of deshabille. In *United States v. Hymans,* 463 F.2d 615, 619 (10th Cir.1972), the court, pursuant to an earlier federal regulation, agreed with the charge that nude sunbathing "where the general public is or is likely to be" constituted "indecent conduct." *Id.* at 619. Actual widespread offense does not appear to have been required.

Biocic chose the location to unburden her bosom, taking care to be far from the madding (or maddened) crowd. She exercised vigilance to be out of sight of everyone but her male companion. He obviously perceived no indecency in Biocic's act, at least the record reveals no objection on his part to what she was doing. As for the valiant Fish and Wildlife Service officer who skillfully eluded detection by Biocic through skulking behind sand dunes until the opportunity to swoop down like a wolf on the fold first presented itself, he also never appears to have found Biocic's actions indecent.[2]

Nevertheless, we today hold that in a frequented public area, pursuant to a regulation which technically prohibits intentional nudity "in public, or in a public place, or in a place open to the public or open to public view," Biocic's desire for the comfort of a bare bosom, however careful she was to avoid public viewing, may fall victim to community vigilance. We do so by questionably equating "nudity" with "indecency." Had Biocic chosen a location far from areas regularly accessible to the public, or had she offered some justification other than the non-offensive worship of the sun, I would find no difficulty in dissenting. I believe it would be inappropriate to veer so close to a free utterance violation or to an invasion of the right of privacy to seek such an attenuated enforcement of the criminal law. While not sufficient, under the law as it now is, to justify a dissent, the case brings us close to a situation like the age-old conundrum of whether, when a tree falls in the forest, far removed from anyone to hear it, there is a sound.

Yet, constrained by precedent, I am compelled to concur. The time may well soon come, as it has already with the French and others, when the perceived public sense of outrage will wane. Biocic's action will then be classified as non-criminal, not because it was a bold blow for "liberty," but because it was too trifling—perhaps even childish—a matter for a community to spend time and energy addressing.

---

**2.** It is "arresting" indeed to imagine him averting his eyes while making the arrest. Yet the fact that participation by him may have been an essential ingredient of the crime charged would appear to afford no defense to Biocic. Unlike situations in which a government agent's partic- ipation in suspicious acts to create a conspiracy will not succeed, *see, e.g., United States v. Hayes,* 775 F.2d 1279, 1283 (4th Cir.1985), the Fish and Wildlife Service officer's "participation" did not depend on his intent.