DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Lorien D. Bourne, appeals the January 10, 2007 judgment of the Bowling Green Municipal Court which found appellant guilty of disorderly conduct under Bowling Green Codified Ordinance 132.04(A)(5), and fined her $25 plus court costs. For the reasons that follow, we affirm the trial court's judgment. *Page 2 
 {¶ 2} The relevant facts are undisputed and as follows. On September 16, 2006, appellant was charged with one count of disorderly conduct stemming from an incident at City Park, in Bowling Green, Ohio. Appellant and some of her friends (known as "The Titty Committee") had organized a "Solidarity Potluck" to raise awareness of sexism and double standards. Fliers announcing the event had been distributed on the campus of Bowling Green State University.
 {¶ 3} On September 16, 2006, at approximately 1:00 p.m., appellant and other men and women gathered at the park for the event. They posted a "Titty Committee" sign. Appellant removed her shirt as did some of the other men and women.
 {¶ 4} Responding to a complaint of topless women in the park, Bowling Green Police Officer Matthew Kielman arrived and requested that the women put their shirts back on; he then issued the women citations for disorderly conduct. On the citation, Officer Kielman noted that there were several people, including children, in the immediate vicinity of the event.
 {¶ 5} On November 9, 2006, appellant filed a motion to dismiss the charge; on November 17, 2006, oral arguments on the motion were held and the matter was taken under advisement. On December 5, 2006, the Bowling Green Municipal Court entered its decision and judgment entry denying appellant's motion to dismiss. The court found that the citation was appropriate due to the anatomical differences between men and women. The court also concluded that the police officer was responding only to appellant's conduct and did not curtail her First Amendment free speech rights. Finally, *Page 3 
the court noted that the right to free speech is not absolute and must be balanced with the rights of others.
 {¶ 6} Appellant was sentenced on January 10, 2007, and this appeal followed. Appellant raises the following three assignments of error:
 {¶ 7} "I. The trial court erred by failing to dismiss the disorderly conduct charge against defendant-appellant under Bowling Green Ordinance Section 132.04(A)(5), in violation of the Equal Protection Clause.
 {¶ 8} "II. The trial court erred by failing to dismiss the selectively enforced disorderly conduct charge against defendant-appellant under Bowling Green Ordinance Section 132.04(A)(5), in violation of the Equal Protection Clause.
 {¶ 9} "III. The trial court erred in finding the defendant-appellant guilty of violating Bowling Green Ordinance Section 132.04(A)(5) because she was exercising her right of free speech and expression."
 {¶ 10} In appellant's first assignment of error she argues that, as applied, the Bowling Green disorderly conduct statute violates the Equal Protection Clause by unfairly prohibiting females, but not males from baring their breasts in public. Appellant was charged with Bowling Green Ordinance 132.04(A)(5) which provides:
 {¶ 11} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
 {¶ 12} "* * *; *Page 4 
 {¶ 13} "(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."
 {¶ 14} Presumably, based upon the fact that Officer Kielman went to the park in response to a complaint, appellant was cited because her bare breasts were "physically offensive" to other park guests. This court does agree that there are occasions where shirtless males are offensive; however, we cannot ignore the firmly rooted societal differences between male and female anatomy. In State v. Poirier, 6th Dist. Nos. L-01-1479, L-01-1480, and L-01-1481, 2002-Ohio-4218, this court discussed the inclusion of "female breast" within the statutory definition of "sexual contact" under R.C. 2907.01(B). Rejecting the appellants' equal protection arguments, we stated:
 {¶ 15} "We further note that the reason the female breast was explicitly enumerated as an `erogenous zone' is the fact that female breasts are anatomically distinct and our society has viewed the public display of female breasts far more differently than male breasts. The female breast has traditionally been viewed as an erogenous zone. Because of the anatomical and societal differences, the government has an interest in preservation of the public decorum, decency and morals. See Buzzetti v. New York (C.A.2 1998), 140 F.3d 134; Hang On, Inc. v.Arlington (C.A.5 1995), 65 F.3d 1248; United States v. Biocic (C.A.4 1991), 928 F.2d 112." Id., ¶ 28. *Page 5 
 {¶ 16} Based on the foregoing, we find that the appellant was not discriminated against based solely upon her gender. Appellant's first assignment of error is not well-taken.
 {¶ 17} In appellant's second assignment of error, she contends that the selective enforcement of the disorderly conduct statute violated her right to equal protection of the laws. Specifically, appellant cites to the fact that there were several males at the park without shirts on and that they were not cited for disorderly conduct.
 {¶ 18} As stated above, this court has clearly stated that there are distinct differences between a shirtless male and a shirtless female. Accordingly, we find that Officer Kielman's enforcement of the ordinance was not "selective" in a constitutional sense. Appellant's second assignment of error is not well-taken.
 {¶ 19} In appellant's third assignment of error, she argues that when the officer issued her a citation, appellant was denied her First Amendment right to free speech. In support, appellant citesCleveland's PM on the Boardwalk, Ltd. v. Ohio Liquor Control Comm. (Jan. 23, 1997), 8th Dist. No. 69779, for the proposition that nude or topless dancing is entitled to free speech protection.
 {¶ 20} As noted by the state, the right to free speech is not absolute. Cox v. Louisiana (1965), 379 U.S. 536, 554. "[W]hen `speech' and `nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."U.S. O'Brien (1968), 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672. The *Page 6 O'Brien court formulated the following four-part test for the constitutionality of speech regulations: (1) the regulation is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; (4) the incidental restriction on alleged First Amendment freedoms is no greater than is necessary to further that interest. Id. at 377.
 {¶ 21} In Egolf v. Witmer (2006), 421 F.Supp.2d 858, a group of young men protested President Bush's visit by stripping down to thong underwear and making a human pyramid. The men intended their structure to resemble a photograph taken at the Abu Ghraib prison in Iraq. Id. at 862. The "pyramid" was constructed in a crowd which included children; the men's genitals were visible through their thin and tight-fitting undergarments. Id. Several of the protestors were arrested and charged under Pennsylvania's lewdness statute.
 {¶ 22} Upon review, the Egolf court first found that the protestors had engaged in "expressive conduct," see Texas v. Johnson (1989),491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342, rather than "pure speech."[1] The court then applied the O'Brien test finding that the state had the authority to enact regulations relating to the health, safety, and morals of its residents; that the state has a compelling interest to protect order and morality, especially where it pertains to children; that the interest in limiting the *Page 7 
protestors "near-nudity" was not related to the concept of their message; and, finally, the court found that the restrictions and their application were no greater than necessary. Id. at 872-873.
 {¶ 23} In the present case, appellant agrees that the speech was "expressive conduct," rather than "pure speech." We concur. Absent a verbal or written explanation, observers could have easily believed that appellant was merely sunbathing rather than making a political statement about sexism and double-standards. Thus, we must apply theO'Brien test to the government action.
 {¶ 24} We first note that the city of Bowling Green has the power to enact and enforce ordinances, including the disorderly conduct ordinance. Second, the statute serves a substantial governmental interest in maintaining peace and order and protecting societal norms. Third, this governmental interest is unquestionably unrelated to appellant's message that men and women should be treated equally. Finally, Officer Kielman's enforcement of the ordinance was not beyond what was necessary to fulfill the government's interest. Officer Kielman simply asked that the offending women put their shirts backs on; Kielman did not attempt to disband the group or bar their message. Accordingly, because Officer Kielman's response comported with the O'Brien test we conclude that appellant's First Amendment right of free speech was not violated. Appellant's third assignment of error is not well-taken.
 {¶ 25} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Bowling Green Municipal *Page 8 
Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerks' expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] We note that "[t]he government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." Texas v. Johnson, 491 U.S. at 406. Pure speech is entitled to a strict scrutiny review. *Page 1